# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **RYAN R. KINNERSON** | **CIVIL ACTION** |
| VERSUS | NO. 16-720 |
| **ARENA OFFSHORE, LP, ET AL** | SECTION "L" (1) |

## ORDER & REASONS

Before the Court is Defendants' Motion in Limine/Daubert Motion to Exclude Report, Opinions, and Testimony of Plaintiff's Expert Economist and Vocational Rehabilitation Consultant, R. Doc. 129. The motion is opposed. R. Doc. 132. The Court now rules as follows.

### I. BACKGROUND

Plaintiff Ryan Kinnerson alleges that he was injured on or about May 25, 2015, while working on a fixed platform off the coast of Louisiana in the Gulf of Mexico. According to the Complaint, Plaintiff sustained injuries while being transferred by Defendant Sparrows' temporary crane in a personnel basket from the fixed platform to the M/V Miss Claire. R. Doc. 1 at 3. Plaintiff alleges that while in the basket, the "personnel basket violently struck the M/V Miss Claire's railing throwing [Plaintiff] off the personnel basket onto the deck of the M/V Miss Claire thereby causing [Plaintiff] to sustain severe disabling personal injuries." R. Doc. 1 at 3–4. Plaintiff brought suit against Arena Offshore, LP, Sparrows Offshore, LLC; and Texas Crew Boats, Inc. All Defendants except Sparrows have settled with Plaintiff and are thus dismissed from this case.

### II. PRESENT MOTION

In this motion, Defendants argue that the Court should exclude the expert reports of

1

Plaintiff's vocational rehabilitation consultant, Glenn Hebert, and expert economist, John Theriot. R. Doc. 129-2 at 1. Defendants contend that Plaintiff's experts offer fundamentally unsupported opinions that will do nothing to assist the finder of fact in understanding the evidence. R. Doc. 129-2 at 4. Plaintiff opposes the motion. R. Doc. 132. Because Defendants filed the present motion before Defendant Sparrows remained as the only Defendant, the Court's analysis below refers to Defendants in the plural.

### III. LAW AND ANALYSIS

The admissibility of expert testimony is governed by Rule 702 of the Federal Rule of Evidence, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

#### a. The Court's gate-keeper function in a bench trial

The Court must act as a "gate-keeper" to ensure the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). However, "[t]he primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003). Accordingly, the Court's "gate-keeper" role is diminished in a bench trial because there is no need to protect the jury and risk tainting the trial by exposing the jury to unreliable evidence. *See Whitehouse Hotel Ltd. V. P'ship v. Comm'r*, 615 F.3d 321, 330

(5th Cir. 2010). Although the "gate-keeper" role may be diminished, the Court is still required to perform its gate-keeping function. *Metavante Corp. v. Emigrant Sav. Bank*, 2010 WL 3385961 (7th Cir. 2010).

In his opposition, Plaintiff argues a *Daubert* motion is inappropriate in this case because it involves a bench trial. R. Doc. 132 at 2. Plaintiff contends, "[t]his Court is experienced and more than capable of evaluating expert testimony and assigning it the appropriate weight." R. Doc. 132 at 2. Plaintiff also references numerous cases tried as bench trials in the Western District of Louisiana that have denied *Daubert* motions. R. Doc. 132 at 9.

The Court recognizes that its role as the "gate-keeper" is diminished in a bench trial. However, the mere fact that a case is being tried as a bench trial does not completely remove the Court's gate-keeping role. In many of the Western District of Louisiana cases that Plaintiff references, the courts did not deny *Daubert* motions simply because they were being tried as bench trials. Instead, the courts analyzed the experts at issue to determine whether a denial of the *Daubert* motions were appropriate. Accordingly, the Court shall do the same here.

**b. Whether Plaintiff's experts utilized sound methodology**

The threshold question in determining whether an individual may offer expert testimony under Rule 702 is whether the individual has the qualifications to do so. Fed. R. Evid. 702. But here, Defendants only challenge the reasoning and methodology of Plaintiff's experts. R. Doc. 129-2 at 4. Because Defendants do not contest Plaintiff's experts' qualifications, the Court will analyze only the methodology used by Plaintiff's experts.

Apart from determining the qualifications of the expert, the Court's gate-keeping role includes ensuring the proffered expert testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010). "This entails a preliminary assessment of whether

3

the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). With respect to reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. To assess methodology, the Court looks to five factors: (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether it has been subjected to peer review and publication," (3) "its known or potential error rate," (4) "the existence and maintenance of standards controlling its operation," and (5) "whether it has attracted widespread acceptance within a relevant scientific community." *Id.* at 579. Moreover, *Kumho Tire Co., Ltd. v. Carmichael* expanded *Daubert* to all experts and, in doing so, emphasized the flexibility of the Court's assessment under *Daubert*. Specifically, the Court has the leeway to decide how to assess experts based on their expertise, "whether basing testimony upon professional studies or personal experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.

When the admissibility of expert testimony is challenged under *Daubert*, the proponent of the evidence bears the burden of proving that the testimony is reliable and relevant. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. *Id.* Rather, some objective, independent validation of the expert's methodology is required. *Id.* In this regard, however, it is not necessary for the proponent of the evidence to prove that "the testimony is factually correct." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). The *Daubert* analysis is not intended to judge the accuracy of the expert's conclusions. *See Guy v. Crown Equip. Corp.*, 394 F. 3d 320, 325 (5th Cir. 2004).

Ultimately, a court's role as a gatekeeper does not replace the adversary system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for [the fact finder's] consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). The Court now applies these legal principles to the individuals who are the subjects of this *Daubert* motion.

### 1. Glenn Hebert

Plaintiff's first expert, Glenn Hebert, is a vocational rehabilitation expert. R. Doc. 129-2 at 6. Vocational rehabilitation is a social science that does not lend itself directly to the *Daubert* factors. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 747 (3d Cir. 2000). Nevertheless, the Court utilizes the *Daubert* factors, and "[j]ust as a scientist would want to duplicate the outcome when evaluating a colleague's claim that he had developed a technique for cold fusion, a vocational rehabilitationist assessing [a plaintiff's] disability determination would want to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated." *Id.* Moreover, the *Daubert* analysis requires the Court to determine if the expert utilized the "generally accepted" methods utilized by other experts in the same field. *Id.* at 748.

Here, Defendants first argue that Hebert does not explain how or why he reached his conclusion about Plaintiff's pre-injury earning capacity; specifically, Hebert's estimated pre-injury earning capacity was based on the earnings of a Level III tester when, in fact, Plaintiff was only a Level II tester. R. Doc. 129-2 at 7–8. Defendants aver that Hebert's conclusions and opinions are based on generic information gathered from unverified websites, and further contend that "Hebert

5

did not consider or review Plaintiff's IRS or Social Security earnings records when making his conclusions. Instead, he reviewed only two of Plaintiff's former pay stubs." R. Doc. 129-2 at 8.

Moreover, Defendants argue that Hebert's post-injury earning capacity opinions are "based on insufficient/inaccurate facts and data." R. Doc. 129-2 at 9. According to Defendants, Hebert failed to follow the specific, four-step method for determining wage loss set forth in *Culver v. Slater Boat Co. ("Culver II")*, 722 F.2d 114, 117 (5th Cir. 1983) cert. denied, 467 U.S. 1252, and cert. denied, 469 U.S. 819 (1984). Defendants contend that if Hebert had followed the *Culver II* method, then Hebert would have considered both negative and positive factors in addition to Plaintiff's actual current wages. R. Doc. 129-2 at 11.

In opposition, Plaintiff argues that Hebert used explanations and facts to back up his conclusions, and, to support this argument, Plaintiff contrasts Defendants' contentions with Hebert's report. R. Doc. 132 at 13–18. Most notably, Hebert explains that he utilized a Level III tester's income because "Chapter 6 of *A Guide to Rehabilitation* indicates that when someone is under the age of 30 at the onset of their disability, they have not yet reached their earning capacity." R. Doc. 132 at 16. Therefore, Hebert states in his report that Plaintiff's loss of earning capacity must be measured based on Plaintiff's potential to earn and not Plaintiff's actual pre-injury earnings. R. Doc. 132 at 15–16.

Accordingly, the Court will deny Defendants' motion to exclude Hebert's report. Hebert relies on and cites to multiple treatises governing his profession and government data in his report. R. Doc. 129-3. Moreover, Hebert not only cites to factually substantial sources, but he explains in detail how he comes to his conclusions using those sources. Therefore, Defendants' contention that Hebert's report was made "[w]ithout explaining how or why he reached this conclusion or what information he used to reach this conclusion" is without merit. R. Doc. 129-2 at 6.

## 2. John Theriot

"[A]lthough mathematical exactness is not required, [expert] testimony of post-injury earning capacity must be based upon a proper factual foundation." *Elcock*, 233 F.3d at 754 (quoting *Benjamin v. Peter's Farm Condominium Owners Ass'n,* 820 F.2d 640, 643 (3d Cir. 1987)). Expert economists must base their testimony on information with a sufficient factual background, such as a foundation in the record. *Elcock*, 233 F.3d at 754. When an expert economist's report is based on flawed facts, then it must be excluded. *Id.* at 754–55.

Defendants argue that because the opinion of Plaintiff's expert economist, John Theriot, is based upon the unreliable information contained in Hebert's report, Theriot's report is also unreliable. R. Doc. 129-2 at 12. Further, according to Defendants, Theriot did not use the proper methodology because he failed "to conduct any independent verification of the information and figures provided by Hebert." R. Doc. 129-2 at 13. Specifically, Defendants aver that "the biggest issue with Theriot's report and opinions are the lack of detail and lack of specificity regarding the underlying facts and methodology." R. Doc. 129-2 at 15. In opposition, Plaintiff submits that "Theriot's opinions are based on the opinions and data in Hebert's reports. Accordingly, because Hebert's opinions are reliable and based on sound methodology, so too are Theriot's." R. Doc. 132 at 18–19.

The Court will deny Defendants' motion to exclude Theriot's expert report. Theriot's opinions and conclusions are based upon information contained in the record as well as substantiated information. For example, Theriot refers to information from the Bureau of Labor Statistics and the United States Department of Agriculture. R. Doc. 129-4 at 2. Accordingly, the Court concludes that Theriot's report is grounded upon a proper factual foundation. Defendants are free to "[v]igorous[ly] cross-examin[e], present[]contrary evidence, and [give] careful

7

instruction on the burden of proof" at the bench trial. *Daubert*, 509 U.S. at 596.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion in Limine/Daubert Motion to Exclude Report, Opinions and Testimony of Plaintiff's Expert Economist and Vocational Rehabilitation Consultant, R. Doc. 129, is hereby **DENIED**.

New Orleans, Louisiana, this 21st day of June, 2019.

                                                                  *[signature]*
                                                                  ELDON E. FALLON
                                                                  U.S. DISTRICT COURT JUDGE